**E-FILED**
Friday, 10 February, 2017  01:45:04 PM
Clerk, U.S. District Court, ILCD

IN THE
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| CARMEN LYNN LAWSON,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:15-cv-04136-JEH |

## Order and Opinion

Now before the Court are the Plaintiff, Carmen Lawson's, Motion for Summary Judgment (D. 14)[1] and the Commissioner's Motion for Summary Affirmance (D. 18).  Both parties have provided supporting Memoranda thereto. (D. 15, 19).  For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Affirmance.[2]

## I

On June 21, 2012, Lawson filed an application for Supplemental Security Income (SSI) alleging disability beginning on August 29, 2001.  Her claim for SSI was denied initially on August 10, 2012, and denied upon reconsideration on February 5, 2013.  On March 12, 2013, Lawson filed a request for a hearing on her application for Social Security benefits.  Lawson appeared at the hearing before the Honorable David W. Thompson (ALJ) by video on March 5, 2014.  She was represented by an attorney.  At the hearing, Lawson amended her alleged onset

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The undersigned presides over this case with the consent of all parties. (D. 11).

date of disability to June 8, 2012.  Following the hearing, the ALJ denied Lawson's claim on April 21, 2014.  The Appeals Council denied Lawson's request for review on July 24, 2015, making the ALJ's Decision the final decision of the Commissioner.  Lawson filed the instant civil action, seeking review of the ALJ's Decision pursuant to 42 U.S.C. §§ 405(g), 1383(c) on September 25, 2015.

## II

At the time Lawson applied for SSI, she was 40 years old.  She was living in a mobile home, in Aledo, Illinois with her boyfriend, who earns income.  Lawson has a high school education but has not worked since 2001.  On the various SSA forms she submitted, Lawson indicated that she has pancreatitis which causes her pain and limits her ability to work.

At the hearing before the ALJ, Lawson testified that her bouts with pancreatitis have increased over the last two years to "several times a month."  (D. 7 at pg. 50).  Lawson said her bouts last anywhere from three days to a week, during which time she either seeks treatment at a hospital or lays down with a heating pad.  She believes stress and diet (either not eating enough, or eating the wrong foods) triggers her pancreatitis attacks.  Lawson has been hospitalized due to the pain from her pancreatitis.  The chief remedy is a bland diet, after which Lawson's condition stabilizes and she is released from the hospital.  (*e.g.* D. 7-3 at pg. 111).

In approximately June of 2012—Lawson was unsure of the precise date— she had stents put in her pancreas to ease her condition.  Lawson said the procedure lessened the pain.  She also testified that, on average, she has two bouts with pancreatitis a month.  As of March 2014, however, Lawson said she had approximately 40 attacks in the past year.  Five or six of those attacks were the type she described as excruciating.

Lawson stated that Doctor Wurzburger has been her primary care physician for approximately two and a half years.  Wurzburger completed residual functional capacity ("RFC") questionnaires on Lawson in February 2103 and January 2014.   In both, Wurzburger estimated that Lawson would miss approximately four days of work due to her pancreatitis attacks.  Lawson testified that she is unable to tend to her normal household chores during her pancreatitis flare ups and her boyfriend has to take care of them instead.  She is on Prilosec for her upset stomach as well as Vicodin and ibuprofen to manage her pain, but they do not work well.

Vocational Expert, Brian Paprocki, also testified at Lawson's hearing.  He presented his finding that Lawson had a past relevant work history as a waitress/cook, performed at a light level.  In answering questions from the ALJ, Paprocki opined that if an employee were to miss four or more days of work per month, they would be precluded from competitive employment of any kind.  He also stated that if an employee were less than 80% productive on the job it would preclude them from holding down competitive employment.  In response to questioning from Lawson's counsel, Paprocki further explained that "two days per month, unexcused" from work, or a productivity rate of 85%, would also preclude Lawson from maintaining competitive employment.  (D. 7 at pg. 57).

In closing, Lawson's counsel stressed that Wurzburger's opinions should be given weight.  Counsel concluded by stating "We're here because the acute pancreatitis would unexpectedly keep [Lawson] off work and lead to absenteeism which would not be tolerated on any full-time, competitive basis and that's the basis for her claim and that's why we're here today."  *Id.* at pg. 58.

Lawson has, admittedly, struggled with alcohol abuse.  She was convicted of DUI in 2001 and lost her driver's license.  Lawson testified that she has not drank alcohol since 2005.  There is a notation in her medical records, however, from

March 2013 where medical staff documented that Lawson admitted to "binge drinking" lately.  *Id.* at pg. 53; D. 7-3 at pg. 74, 86.  At the hearing, Lawson claimed the note is inaccurate.

### III

In his Decision, the ALJ determined that Lawson had the severe impairment chronic pancreatitis (20 CFR 416.920(c)).  (D. 7 at pg. 25).  The ALJ crafted the following Residual Functional Capacity for Lawson:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c).

*Id.* at pg. 28.  In reaching that finding, the ALJ recounted Lawson's testimony at the hearing regarding her condition.  Following protocol, he determined there was a medical impairment reasonably expected to produce Lawson's symptoms.  The ALJ further found, however, that in evaluating the intensity, persistence, and limiting effects of Lawson's symptoms, he needed to make a finding on the credibility of her statements "based on a consideration of the entire case record[]" since her statements were not "substantiated by objective medical evidence[.]"  *Id.* at pg. 28.

After considering all of the evidence, the ALJ found Lawson's statements "not entirely credible[.]"  *Id.* at pg. 29.  He went on to explain that her claim of complete and total disability could not be accepted.  The ALJ noted that Lawson's claims of extreme limited functional capacity are not supported by the medical records.  He emphasized that, based on the record, Lawson's compliance with treatment instructions—mainly diet—was questionable.  The ALJ supported this logic by citing instances memorialized in Lawson's medical records where she was implicated for drinking alcohol after 2005, concluding:

> This evidence casts doubt on the claimant's credibility and leads to a serious question about her drinking and her denial of drinking at all since 2005.  Whether the claimant is drinking or not, the clear indication is that what she consumes causes her pancreatitis episodes.  Given these findings, the undersigned cannot conclude that the claimant is entirely disabled under the guidelines of Social Security Ruling 96-7p and 20 CFR 416.929.

*Id*.

The ALJ specifically addressed Wurzburger's opinions in his Decision.  He noted that Wurzburger's RFC questionnaires from February 2013 and January 2014 supported Lawson's claim of disability.  The ALJ concluded, however, that:

> [T]he claimant gave no testimony (or any other evidence) that she has problems other than during her pancreatitis attacks.  As such, she would have no limitations when she is not having a pancreatitis attack.  If Dr. Wurzburger is saying that these are the claimant's limitations during a pancreatitis attack, then her bouts are not nearly as bad as the claimant alleges.  This leaves the doctor's opinion that the claimant will miss more than 4 days of work per month.  However, Dr. Wurzburger fails to support this opinion with any statistics of the number of bouts the claimant experiences per month or how long each bout lasts.  Thus, the doctor's opinion is vague, ambiguous, and unsupported.

*Id*.  The ALJ ultimately found that Lawson was not disabled.

## IV

Lawson argues that the ALJ erred: (1) in evaluating Wurzburger's opinions; (2) in making a credibility assessment of Lawson; and (3) in making a Step 5 determination.  The Court disagrees.

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

6

4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. In the instant case, Lawson claims the ALJ erred at Step Five.

**A**

First, Lawson argues the ALJ erred in evaluating her treating physician's opinions. Specifically, Lawson argues the ALJ's finding that she had the RFC to perform the full range of medium work "is unsupported as he improperly afforded Dr. Wurzburger's opinion inadequate weight in violation of the regulations[.]" (D. 15 at pg. 10). As Lawson sees it, this renders the ALJ's finding an inaccurate representation of Lawson's maximum functional capacity. *Id.* at pg. 12-13. In response, the Commissioner highlights those parts of the ALJ's Decision which, according to the Commissioner, show that the ALJ properly considered the record evidence in concluding that Wurzburger's opinions were entitled to little weight. (D. 19 at pg. 8-16).

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. §416.927(c)(3). If the ALJ does not

give a treating physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion.  20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).  Here, the ALJ did not err in failing to give Wurzburger's opinions controlling weight.

At issue are Wurzburger's findings in the form of RFC questionnaires where she checked boxes to assert that by her estimate, Lawson would likely be absent from work "[t]hree to four times a month" and later "[m]ore than four times a month" due to her impairment.  (D. 7-3 at pg. 45, 160).  In the ALJ's discussion of these findings, he does point out they are unsupported by reference to any actual number, or even an estimate, of the bouts of pancreatitis Lawson experienced in a given month.  Lawson does not point to anything in the record to contradict the ALJ's conclusion that there is no support for Wurzburger's finding.

Rather, Lawson emphasizes that the onus was on the ALJ to reach out to Wurzburger to solicit supporting evidence when he found her opinion lacking. (D. 15 at pg. 12-13).  Generally speaking, the ALJ has a duty to develop a full and fair record, and the failure to do so is cause for remand.  *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).  But only a "significant omission" justifies remand, and the ALJ's duty to develop the record is only heightened when a claimant is proceeding without counsel.  *Nelms*, 553 F.3d at 1098.

Here, Lawson proceeded with counsel, eliminating the Court's need to heighten scrutiny.  Moreover, the error Lawson complains of does not qualify as a significant omission.  "[A]n omission is significant only if it is prejudicial.  Mere conjecture or speculation that additional evidence might have been obtained in the

case is insufficient to warrant a remand.  Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.* (citations and internal quotations omitted).  Lawson has failed to advance an argument beyond speculation and bring to the Court's attention any specific facts the ALJ did not consider.  The only evidence in the record of how many pancreatitis attacks Lawson experienced is her own testimony.  As discussed in more detail in the next subsection, *infra*, the ALJ justifiably views Lawson's testimony with caution and questions her credibility.

The ALJ did not err in assigning little weight to Wurzburger's opinions. Lawson claims the ALJ "failed to support the basis for rejecting Dr. Wurzburger's assessment."  (D. 15 at pg. 14).  This assertion is contradicted by the record.  In his Decision, the ALJ explained that he gave little weight to Wurzburger's opinions because her assertions that Lawson would miss a range of workdays in a given month were vague and unsupported.  (D. 7 at pg. 29).

In this discussion, the ALJ emphasized the role Lawson's dietary restrictions played in her pancreatitis attacks.  The record supports the conclusion that Lawson has not followed recommended dietary restrictions.  In December 2013, for example, she went to the emergency room due to pain from her pancreatitis. Lawson denied drinking alcohol at that time but admitted that she had not been following her recommended diet.  *Id.* at pg. 117.

Lawson's food consumption is patently interwoven with the frequency of her pancreatitis bouts.  The ALJ pointed to Lawson's medical records, which indicate that Lawson has not followed recommended dietary restrictions.  His observation that, according to the record, Lawson experienced stability in her condition with changes in what she consumed does not amount to reversible error. The ALJ cited Lawson's evidenced stability with dietary changes to support his

determination as to the weight he gave Wurzburger 's opinions, doing what was required of him under 20 CFR § 416.927.

Thus, the ALJ did not err in giving little weight to Wurzburger's opinions. In other words, the Court can trace the path of the ALJ's reasoning from his discussion of the medical opinions of record and the weight he assigned each to the RFC he ultimately formulated. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate [their] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The ALJ addressed the record evidence as a whole in his Decision, and so the Court finds that substantial evidence supports the weight he gave Wurzburger's opinions.

**B**

Lawson further argues that the ALJ's finding that her subjective complaints were less than fully credible is unsupported by substantial evidence. (D. 15 at pg. 16). Specifically, she claims that the ALJ was required to evaluate the intensity and persistence of Lawson's symptoms in the aftermath of his finding that Lawson had an underlying medically determinable impairment that could reasonably be expected to produce her professed symptoms. *Id*. Lawson also asserts that the ALJ failed to perform any analysis of the regulatory factors in finding Lawson lacked credibility. *Id.* at pg. 15-16. The Commissioner argues the ALJ reasonably evaluated Lawson's subjective complaints. (D. 19 at pg. 16-19).

Determinations of credibility made by the ALJ will not be overturned unless the findings are patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). SSR 96–7p instructs that when "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and that a credibility determination "must contain specific reasons for the finding on

credibility, supported by the evidence in the case record."[3] An ALJ must provide "enough detail and clarity to permit meaningful review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, a credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Just as the Court cannot re-weigh the medical evidence of record and resolve conflicts in the record, nor can the Court make its own credibility finding. "When assessing an ALJ's credibility determination, [the court does] not . . . undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examines whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). It is only when an ALJ's determination lacks any explanation or support that it is "patently wrong." *Id.* at 413-14. That is not the case here.

In his ruling, the ALJ provided reasons why he found Lawson's testimony not fully credible. (D. 7 at pg. 29). Furthermore, the record supports his conclusion that Lawson has a credibility issue. At the ALJ hearing in March 2014, Lawson claimed she had not drank alcohol since 2005. Medical records indicate, however, that she likely did drink alcohol after 2005. In June 2012, during an emergency room visit, she told medical staff that she "[d]rinks alcohol on a regular basis, primarily beer[.]" (D. 7-2 at pg. 9). Approximately a week later at a follow up appointment, treatment notes indicate that alcohol abuse was one of her active problems. *Id.* at pg. 139. In June 2013, medical records further indicate that

---

[3] SSR 96-7p was superseded by SSR 16-3p, effective March 16, 2016. The operative language the Court quotes here from SSR 96-7p, however, appears in SSR 16-3p verbatim. By either standard, the Court's analysis remains the same.

Lawson used alcohol occasionally.  (D. 7-3 at pg. 91).  Wurzburger herself noted alcohol abuse was one of Lawson's active problems at that time.  *Id.* at pg. 97.

Thus, the ALJ included specific reasons for his finding on credibility, supported by the evidence in the case record.  The ALJ confronted the objective medical evidence of Lawson's impairments, her daily activities, and her treatment. In so doing, the ALJ provided enough clarity and detail to permit meaningful review.  The ALJ considered the contrary evidence and explained why he rejected it. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record").  The ALJ did not, therefore, commit an error in his credibility analysis that would require remand.

## C

Finally, Lawson argues that the ALJ erred in making a Step 5 determination unsupported by substantial evidence.  Lawson makes this argument first by asserting that the ALJ's error was in relying "on vocational testimony elicited in response to an incomplete hypothetical question." (D. 15 at pg. 3)  Later, however, Lawson claims the ALJ's error on this issue was in failing to properly "account for [her] expected absenteeism resulting from her impairments and treatment." (D. 15 at pg. 17).  Neither argument is supported by a relevant citation to the record.

Instead, Lawson cites 20 CFR 416.912 to highlight that an ALJ must support a finding of non-disability by determining whether there is any work in the national economy that the claimant can perform, in full consideration of the claimant's age, education, and residual functional capacity.  (D. 15 at pg. 18) Lawson then merely concludes that "due to the ALJ's errors in evaluating the opinion evidence and credibility, the ALJ's conclusion regarding [her] residual functional capacity is unsupported by substantial evidence." *Id.*

Given that Lawson's argument on this point rests solely on the success of the prior two, it cannot succeed.  As discussed previously, Lawson's first two arguments are not meritorious.  Therefore, her third argument suffers the same fate as the first two.  The Court need not address issue three further.

## V

For the reasons stated herein, Lawson's Motion for Summary Judgment (D. 14) is DENIED and the Commissioner's Motion for Summary Affirmance (D. 18) is GRANTED.  This matter is now terminated.

*It is so ordered.*

Entered on February 9, 2017.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE

13